IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

EVAN GERFEN, )
)
    Plaintiff, )
)
v. )
) Case No. CIV-20-103-SM
ANDREW M. SAUL, )
COMMISSIONER OF SOCIAL )
SECURITY ADMINISTRATION, )
)
    Defendant. )

## **MEMORANDUM OPINION AND ORDER**

Evan Gerfen (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). *See* Docs. 7, 11.

Plaintiff argues the ALJ erred in giving only some weight to consultative examiner Dr. Julie Wallace's opinion. Doc. 12, at 4. After a careful review of the record (AR), the parties' briefs, and the relevant authority, the Court finds substantial evidence supports the ALJ's decision. *See* 42 U.S.C. § 405(g).[1]

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy.

**C.     Relevant findings.**

**1.     Administrative Law Judge's findings.**

Plaintiff previously sought judicial review of an ALJ's denial of benefits, and this Court reversed and remanded for further proceedings.  AR 488-501.  The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe.  *Id.* at 438-445; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process).  In its March 2019 decision, the ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since her amended alleged onset date, July 12, 2012, through her date of last insured, September 30, 2014;

(2) had severe medically determinable impairments of epilepsy and a history of surgical resection of brain tumors causing late effects of injuries to the nervous system;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the physical residual functional capacity (RFC)[2] to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b): in that she can lift up to 10 pounds frequently and up to 20 pounds occasionally; sit for at least 6 hours during an 8-hour workday; and stand/walk for up to 30 minutes at a time for a total of 6 hours during an 8-hour workday; can perform no more than frequent handling,

---

[2]   RFC "is the most [a claimant] can still do despite [a claimant's] limitations."  20 C.F.R. § 404.1545(a)(1).

> fingering, or feeling; she must avoid exposure to temperature extremes, hazards, heights, and machinery; and she is limited to simple and detailed tasks and instructions with no more than occasional public contact;
>
> (5) was unable to perform any past relevant work;
>
> (6) could perform jobs that exist in significant numbers in the national economy; namely, general office clerk, mail sorter, and bench assembler; and thus
>
> (7) had not been under a disability from July 12, 2012, the amended alleged onset date, through September 30, 2014, the last date insured.

*See* AR 438-445.

### 2. Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 427-430, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less

than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

### B. Issue for judicial review.

Plaintiff asserts the ALJ gave insufficient reasons for giving Dr. Wallace's opinion only "some weight." Doc. 12, at 4-10. Dr. Wallace's July 30, 2013 mental consultative examination led her to opine:

> Ms. Gerfen has an exceptionally positive attitude and is able to enjoy interacting with others. She is incapable of writing, typing, remembering and relaying verbal messages on a consistent basis. Her cognitive deficits due to Dementia type symptoms make her very inconsistent in her ability to work. Her prognosis is very guarded and it is unlikely that her current condition will improve over the next 12 months.

AR 352.

Dr. Wallace stated the following as to Plaintiff's mental status:

> Speech was normal in rate, volume, fluency and effectiveness at the time of the interview. *Her thought processes appeared to be relevant, logical, well-connected, and goal directed. There were*

5

> *no signs of circumstantial, tangential, or other peculiar thought processes.* Thought content was all normal. There were no observations of delusional ideas or obsessive thinking. Suicidal ideation is denied at this time. She states that she did see purple elephants, and strange purple things at one time as hallucinations brought on by particular drug she was given for pain. However, the hallucinations went away immediately following the cessation of this drug. She has never had any other perceptual abnormalities. Her mood was happy and she was cheerful, laughing, and engaging. Her affect was appropriate.

*Id.* at 351 (emphasis added). Dr. Wallace found the following as to Plaintiff's sensorium and cognition:

> She was administered the Montreal Cognitive Assessment (MoCA).[3] In the executive functioning and visual spatial category *she received all of the possible points* for drawing a line alternating between numbers and letters, copying a cube, and correctly drawing the contour, numbers, and hands of a clock. *She also received the maximum number of points in naming category. In memory she was able to recall 4 out of 5 words on the first trial and 5 out of 5 of the same words on the second trial. For attention she was able to quickly and easily repeat five digits forward, three digits backwards, and tap her hands to the letter A.* However when it came to the serial seven subtraction exercise she replied 93, 85, 76, 68, and 51. This received a score of 1 of 3 points. She stated that she was horrible at math now. Because of the 2 points missed in this her overall attention score was 4 out of 6 possible points. She was able to easily and efficiently answer similarly questions and scored the maximum number of points for abstract thinking. She was also oriented fully to the day, date, month, year, place, and city.

*Id.* (emphasis added).

---

[3] *See* https://www.mocatest.org/about/ (last visited September 30, 2020).

6

As to the areas of deficits, Dr. Wallace explained:

> She had two areas of deficits.  In delayed recall she was only able to name 3 out of 5 words after a five-minute delay.  Instead of saying "Daisy" she said the word "Monkey".  Given categorical cues she did quickly remember a fourth and eventually a fifth word.  She scored 3 out of 5 points possible in delayed recall.  Her biggest area of deficit was in the language category.  She was not able to repeat either of the two sentences as they were spoken to her and could not come up with 11 words starting with the letter F in 1 minute.  She only came up with five words and repeated two of these.  She scored 0 out of 3 points in the language category.  Her overall score on the MoCA was 23 out of 30 with 26 and above being considered the average range of functioning.

*Id.* 352.

Dr. Wallace also opined Plaintiff's

> fund of information is high and consistent with her educational background.  However, there are times that the information is not assessable to her because of her dementia type symptoms.  She is estimated to be functioning in the above average range of intellectual capabilities.  This also is impacted at times by all of the dementia.  She is capable of good judgment and insight.

*Id.*

Plaintiff argues the ALJ "played doctor" when he relied on his interpretation of Plaintiff's MoCA score and his suggestion Dr. Wallace's opinion is inconsistent with her own findings. Doc. 12, at 5-6.  She also maintains that the ALJ improperly discounted Dr. Wallace's opinion when he noted she met with Plaintiff only once. *Id.* at 7-8.  Finally, Plaintiff objects to then-Magistrate Judge Jones's "attempt to shore up the ALJ's weighing of this

7

opinion." *Id.* at 8-9.

In granting the opinion "some weight," the ALJ reasoned:

While Dr. Wallace did find that the claimant has a cognitive disorder, her limitations are not consistent with the findings in her own examination, which showed that the claimant was only slightly below average. Further, Dr. Wallace only met with the claimant one time and therefore was unable to get a longitudinal understanding of the claimant's limitations.

AR 443.

One other medical source opined as to Plaintiff's mental-health functioning, State agency psychologist KDM, PhD. *Id.* at 69-71, 74-76. The Commissioner notes Dr. KDM stated the record showed "[n]o mental health treatment." Doc. 20, at 4 (quoting AR 70-71). Dr. Wallace similarly noted Plaintiff "ha[d] never received any inpatient treatment or counseling for psychiatric reasons," and had never received any mental-health medications. AR 350. Dr. KDM reviewed Dr. Wallace's findings and conclusions. *Id.* at 70-71. Dr. KDM found Plaintiff to be moderately limited in her ability to understand, remember, and carry out detailed instructions, to interact appropriately with the general public, and to respond appropriately to change in the work setting. *Id.* at 74-76. In all other areas, Dr. KDM found Plaintiff "not significantly limited." *Id.*

To the extent Plaintiff argues the ALJ "played doctor," by determining her MoCA examination was "only slightly below average," to reject some of Dr. Wallace's more severe limitations, the Court disagrees. Doc. 12, at 6. The ALJ found Dr. Wallace's opinion internally inconsistent. AR 443. The ALJ looked at the entire opinion and also considered Dr. KDM's findings. The Court will not reweigh the evidence. *See Wall*, 561 F.3d at 1052.

The ALJ also noted Dr. Wallace met with Plaintiff only one time, but this was not the only reason for discounting her opinion. AR 443. Plaintiff objects to the ALJ's reliance upon Dr. KDM, who did not examine Plaintiff. Doc. 12, at 7. Again, in doing so, the ALJ noted Dr. KDM's conclusion was consistent with the record as a whole, entitling it to great weight. AR 443.

The Commissioner maintains that the ALJ relied on valid reasons, supported by substantial evidence, for discounting Dr. Wallace's opinion. Doc. 20, at 8-9. In short, the Commissioner urges the Court to affirm the ALJ's decision because the ALJ gave valid reasons grounded in substantial evidence for discounting Dr. Wallace's opinion. The Court agrees. This Court cannot reweigh the evidence in such circumstances. *See Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (noting the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency").

9

Finally, Plaintiff argues Judge Jones played doctor when he reviewed Dr. Wallace's opinion in Plaintiff's previous appeal. Doc. 12, at 9; AR. 496-97. Judge Jones reversed and remanded this action on other grounds, and this Court reviews the final decision of the ALJ that is before it, not an earlier appeal.

### III. Conclusion.

Based on the above, the Court **AFFIRMS** the Commissioner's decision.

**ENTERED** this 20th day of October, 2020.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE